IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| RICHARD L. ABBOTT | )   No. 1:23-mc-00524-MN |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Richard L. Abbott, Hockessin, DE – *Pro se* respondent

September 26, 2024
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court is *pro se* Respondent Richard L. Abbott's Response (D.I. 6) to this Court's November 17, 2023 Order to Show Cause why, having been disbarred by the Delaware Supreme Court, imposition of an identical restriction by this Court would be unwarranted. (D.I. 2). For the reasons set forth below, the Court will impose an identical restriction and Respondent will remain disbarred from practicing in this Court.

I.      **BACKGROUND**

Respondent Richard L. Abbott ("Abbott") has been disbarred in Delaware. The Delaware Supreme Court imposed the penalty in 2023 after finding that he had violated multiple of the Delaware Lawyers' Rules of Professional Conduct ("DLRPC") – specifically, Rules 3.4(c), 3.5(d), 8.4(a), 8.4(c), and 8.4(d). (D.I. 1 at 6). Pursuant to the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, Abbott has also been disbarred from this District unless and until he can demonstrate that this Court should not impose the same discipline as the Delaware Supreme Court. D. Del. LR 83.6(b)(1).

Abbott's disbarment in Delaware stems from advice he gave a client nearly a decade ago. In 2014 and early 2015, Abbott was representing Marshall Jenney ("Jenney") in a lawsuit brought by the Seabreeze Homeowners' Association ("Seabreeze") regarding the trees and shrubbery on Jenney's properties. (D.I. 1 at 6-7). On July 11, 2014, the Delaware Court of Chancery granted a consent order ("the Consent Order") requiring Jenney – and his successors, heirs, and assigns – to trim these plants. (D.I. 1 at 7). Several months of delays ensued. (D.I. 1 at 7-8). On February 25 and March 3, 2015, the presiding Vice Chancellor ("the Vice Chancellor") respectively issued an order and a set of bench rulings obligating Jenney to complete the trimming work by April 22, 2015. (D.I. 1 at 9).

On March 7, 2015, Abbott told Jenney via email that he could get "off the hook" from having to comply with the Consent Order by transferring the properties to his wife. (D.I. 1 at 10-11). Not mentioning the Consent Order language that bound Jenney's successors, heirs, and assigns, Abbott wrote that the Consent Order and a preceding settlement were "purely personal obligations of yours that [following a transfer] would then be impossible to perform," and that "you can just wait a few years and then have [your wife] convey the parcels back to you." (D.I. 1 at 10-11). In a subsequent email, Abbott acknowledged that the Consent Order's language about successors, heirs, and assigns "could give [Seabreeze's counsel] a shot at arguing that [Jenney's duties] ran with the land," but they nonetheless completed the transfer on March 12, 2015. (D.I. 1 at 12). On March 16, Abbott informed the Vice Chancellor in a letter ("the March 16 letter") that the property had been transferred and that Jenney had been relieved of his obligation to trim the trees and shrubs. (D.I. 1 at 13). Jenney would later testify that "he had just as much control over the Properties after the transfer to his wife as he did before," and he continued to collect rent and pay taxes, bills and maintenance costs. (D.I. 1 at 17-18). By the end of 2015, the work had finally been completed, the case dismissed, and the properties transferred back to Jenney. (D.I. 1 at 17).

Nevertheless, Abbotts' actions had begun to draw scrutiny. In a proceeding soon after the initial transfer, the Vice Chancellor stated that "it's clear to me there was contempt of my bench order" and described Abbott's actions as "unacceptable behavior for an attorney in this Court." (D.I. 1 at 16). The Vice Chancellor referred Abbott to Delaware's Office of Disciplinary Counsel ("the ODC"), which opened an investigation ("the ODC investigation"). (D.I. 1 at 18-19). The ODC investigation and disciplinary process, which Abbott describes as the "Star Chamber Proceeding," (D.I. 6 at 16), lasted several years. (D.I. 1 at 20-34).

During this time, Abbott brought lawsuits and ethical complaints against several of the judicial officers involved.  (D.I. 1 at 20-29).  He also repeatedly attacked the Vice Chancellor in filings.  For instance, he claimed that the Vice Chancellor had: "attempt[ed] to harm me as a punishment for daring to do my job in furtherance of his own personal and emotional issues" (D.I. 1 at 21);  "concocted a fairytale story in the hopes that he could sell it to someone who would buy his spin and abuse the system" (D.I. 1 at 21-22); and gone on a "Maniacal Rant" with "inflammatory buzzwords . . . carefully selected by the Angry Vice Chancellor to manufacture a record to further his diabolical plot to destroy Abbott for purely personal reasons."  (D.I. 1 at 25).

Also during these proceedings, Abbott accused the ODC of "acting in bad faith" upon "the vindictive urging of the emotionally unhinged Vice Chancellor," demanded discovery into any "psychological conditions . . . that the Angry Vice Chancellor may have suffered in 2015," and claimed that the Delaware Supreme Court was "looking a blind eye to the corruption that has infected the ODC's dealings vis-à-vis Abbott for lo these many years now."  (D.I. 1 at 25-27).

A panel of the Board on Professional Responsibility ("the Panel") held a seven-day disciplinary hearing, which Abbott calls the "Soviet Style Show Trial," in November 2021.  (D.I. 1 at 34; D.I. 6 at 7).  On July 11, 2022, the Panel found clear and convincing evidence that Abbott had violated DLRPC Rules 3.5(d), 8.4(c), and 8.4(d), which respectively prohibit conduct "intended to disrupt a tribunal or . . . that is degrading to a tribunal;" conduct "involving "dishonesty, fraud, deceit or misrepresentation;" and conduct "prejudicial to the administration of justice."  (D.I. 1 at 5).  The Panel did not find clear and convincing evidence that he had violated Rule 3.4(c) ("knowingly disobey[ing] an obligation under the rules of a tribunal," except in certain circumstances), or 8.4(a) (violating the Rules of Professional Conduct, or contributing to such a violation).  (D.I. 1 at 5).  After a sanctions hearing, (D.I. 1 at 37), a majority of the Panel

recommended a two-year suspension, while the Panel's Chair recommended disbarment.  (D.I. 1 at 38).

The Panel's Report and Recommendations were docketed with the Delaware Supreme Court in January 2023.  (D.I. 1 at 40).  The Delaware Supreme Court reviewed the record "independently . . . to determine whether there is substantial evidence to support the Panel's factual findings," and reviewed the Panel's conclusions of law *de novo*.  (D.I. 1 at 43) (citing *In re Nadel*, 82 A.3d 716, 720 (Del. 2013) and *In re Abbott*, 925 A.2d 482, 484 (Del. 2007)).  In doing so, the Supreme Court found that Abbott had violated Rules 3.4(c), 3.5(d), 8.4(a), 8.4(c), and 8.4(d), warranting disbarment.  (D.I. 1 at 6).

"When another jurisdiction imposes discipline against an attorney admitted to practice in this Court, the same discipline is automatically effective in this Court."  D. Del. LR 83.6(b)(1).  Accordingly, this Court issued an Order to Show Cause on November 16, 2023, requiring Abbott to file "a detailed statement informing this court of any claim . . . predicated upon grounds set forth in Local Rule of Civil Procedure 83.6(b), that the imposition of identical restrictions by this Court would be unwarranted."  (D.I. 2).  Abbott filed his Response to this Order ("the Response") on January 5, 2024.  (D.I. 6).

## II.  <u>LEGAL STANDARDS</u>

This Court, "like all federal courts, has the power both to prescribe requirements for admission to practice before [it] and to discipline attorneys who have been admitted to practice before [it]."  *Matter of Abrams*, 521 F.2d 1094, 1099 (3d Cir. 1975).  Thus, "although the decisions of state courts in such matters are 'entitled to respect,' they are 'not conclusively binding on the federal courts.'"  *In re Surrick*, 338 F.3d 224, 231 (3d Cir. 2003) (quoting *In re Ruffalo*, 390 U.S. 544, 547 (1968)).  The discipline imposed by the state is the starting point of the inquiry, but the

Court has a duty "to determine for [itself an attorney's] right to continue to be a member of this Bar." *Selling v. Radford,* 243 U.S. 46, 50 (1917).

The United States Supreme Court has instructed that a district court's review of another court's attorney discipline should entail "an intrinsic consideration of the record." *Selling*, 243 U.S. at 51. This means that "there is no entitlement to a *de novo* trial before the District Court." *In re Surrick*, 338 F.3d at 232. Instead, district courts should examine the state record as a whole and determine whether to impose different discipline. *Id.* at 231-32; *see also* D. Del. LR 83.6(b)(5).

Attorneys admitted to practice in the District of Delaware are governed by the American Bar Association's Model Rules of Professional Conduct ("the ABA Model Rules"). D. Del. LR 83.6(d). This District will uphold another court's discipline unless it finds one of four factors ("the Rule 83.6 factors") listed in Local Rule 83.6(b)(5):

> (A) The procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> (B) There was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or
>
> (C) The imposition of the same discipline by this Court would result in grave injustice; or
>
> (D) The misconduct established is deemed by this Court to warrant substantially different discipline

D. Del. LR 83.6(b)(5)(A)-(D).

The first three factors codify conditions set out by the U.S. Supreme Court in *Selling v. Radford*. 243 U.S. at 51. The Third Circuit has held, in a case involving nearly-identical district court rules, that "attorneys subject to reciprocal discipline in federal court bear the burden of

demonstrating, by clear and convincing evidence, that one of the *Selling* elements" – which here correspond to the first three Rule 83.6 factors – "precludes reciprocal discipline." *In re Surrick*, 338 F.3d at 231-232 (internal quotations and citations omitted). *See also id. at* 231 n.6 (listing the Eastern District of Pennsylvania rules at issue in that case); *Selling*, 243 U.S. at 51 (reciprocal discipline should be maintained unless either: "the state procedure, from want of notice or opportunity to be heard, was wanting in due process;" "there was such an infirmity of proof . . . that we could not, consistently with our duty, accept as final the conclusion on that subject;" or "that some other grave reason" conflicted with the court's duty not to disbar except when "constrained" by "the principles of right and justice"); D. Del. LR 83.6(b)(5)(A), (B) and (C) (respectively the "due process," "infirmity of proof" and "grave injustice" factors).

## III.  **DISCUSSION**

As previously noted, the Delaware Supreme Court found that Abbott violated DLRPC Rules 3.4(c), 8.4(a), 3.5(d), 8.4(c), and 8.4(d).  (D.I. 1 at 6).  Guided by the Rule 83.6 factors, the Court will examine each of these findings – and Abbott's challenges to them – in turn.

### A.    **The Rule 3.4(c) Violation**

DLRPC Rule 3.4(c) states that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."  ABA Model Rule 3.4(c) states the same.  *See* Model Rules of Prof'l Conduct r. 3.4(c) (Am. Bar Ass'n 2020).

#### 1.    **The Delaware Supreme Court Found That Abbott Violated DLRPC Rule 3.4(c)**

The Delaware Supreme Court found that Abbott had violated DLRPC Rule 3.4(c) because: (1) in March 2015, his client Jenney "was obligated under the Consent Order and [Court of Chancery's] March 3, 2015 Bench Rulings to trim the trees and shrubs on his properties" (D.I. 1

at 45); (2) by counseling the property transfer in his March 7, 2015 email to Jenney, Abbott "intended to make Jenney's compliance" with that obligation "impossible" (D.I. 1 at 45); (3) Abbott did so knowingly (D.I. 1 at 46); and (4) the "open refusal" exception did not apply (D.I. 1 at 48-49).  It refuted several arguments Abbott raised to the contrary.  (D.I. 1 at 43-49).

> ### 2.   Abbott Has Not Adequately Shown Any Infirmity Of Proof In The Delaware Court's Finding

In his Response, Abbott argued that the ODC failed to prove several elements of a Rule 3.4(c) violation.  (D.I. 6 at 10-15, 21-22).  He fails, however, to present clear and convincing evidence of any "infirmity of proof" concerning these elements.  *See* D. Del. LR 83.6(b)(5)(B).

The infirmity of proof factor requires this Court to examine the state proceeding's evidentiary record and decide whether Abbott has presented clear and convincing evidence of an infirmity.  *See In re Surrick*, 328 F.3d at 229 (describing attorney's clear-and-convincing standard) *and In re Gannon*, 807 F. App'x 164, 165 (3d Cir. 2020) (upholding district court's infirmity of proof finding after concluding that it had "performed a detailed review of the evidence supporting each violation").  This inquiry does *not* involve questioning the scope or applicability of state attorney-conduct rules.  In the 2020 case *In the Matter of Fina*, this Court deferred to the Pennsylvania Supreme Court's interpretation of its attorney-conduct rules, only re-examining the evidence to determine whether "there was such an infirmity of proof establishing the misconduct as to leave this court with the necessary 'clear conviction'" that the violation had not occurred.  *In the Matter of Fina*, No. 20-mc-103, 2020 WL 4050416 at *4-*6 (D. Del. July 20, 2020).  *See also In re Rodriguez*, 304 Fed. Appx. 947, 954 (3d Cir. 2008) (applying holding that state supreme court decisions "are, of course, the authoritative source" on state-law matters to a case where attorney sought reinstatement after reciprocal disbarment (citing *State Farm Mutual Automobile Insurance Co. v. Coviello,* 233 F.3d 710, 713 (3d Cir.2000)).  This Court will do the same here.

Here, the Delaware Supreme Court cited a Delaware Rule of Professional Conduct that an attorney's "knowledge may be inferred from circumstances," (D.I. 1 at 46 (citing DLRPC Rule 1.0(f))) (*see also* MODEL RULES OF PROF'L CONDUCT r. 1.0(f) (AM. BAR ASS'N 2020) (also permitting inference of knowledge)).   State caselaw led the Delaware Supreme Court to conclude that Jenney's duty to trim the trees in March 2015 amounted to a court-imposed "obligation," and that a lawyer helping a client avoid this duty would violate DLRPC Rule 3.4(c).  (D.I. 1 at 46-48 nn.73-76).   Abbott's Response repeatedly takes issue with these interpretations of the DLRPC,[1] but this Court will defer to those interpretations as it did in *Fina.*

Examining the evidentiary record, the Court sees no infirmity of proof.  Abbott has cast no doubt on the evidence the Delaware Supreme Court relied upon to find that he violated Rule DLRPC 3.4(c) by "knowingly disobey[ing] an obligation under the rules of a tribunal" – evidence that included the March 7 email itself, in which Abbott described Jenney's duties as "obligations" which his transfer plan would make it "impossible for [Jenney] to perform."  (D.I. 1 at 10, 46).  Also in this email, Abbott informed Jenney that he could "just wait a few years" and re-transfer the properties to himself, "at which time Seabreeze would likely do nothing."  (D.I. 1 at 11).

The Delaware Supreme Court also found that Rule 3.4(c)'s "open refusal" safe harbor did not apply, because "there was no open refusal before the transfer of properties" and Abbott had repeatedly represented that Jenney intended to complete the work.  (D.I. 1 at 48-49).  Abbott's

---

[1]     Throughout his Response, Abbott characterizes the March 7 email as "advising his client on how to potentially avoid a Court Judgment" or navigate future possibilities, rather than avoid an existing obligation.  (D.I. 6 at 4, 10, 22, 62, 72, 114).  He also repeatedly claims that the Delaware Supreme Court engaged in a "post hoc re-write" or "tortured construction" of DLRPC Rule 3.4(c), (D.I. 6 at 10-11, 13, 14, 73, 83), claims that his client, not he, engaged in the sanctioned activity, (D.I. 6 at 14, 15), and insists the transfer complied with all relevant statutes.  (D.I. 6 at 10, 13, 15, 26, 35).

Response claims that the post-transfer March 16 letter brought him into this safe harbor, but does not dispute that he sent the letter after the transfer or made the pre-transfer representations that the Delaware Supreme Court noted. (D.I. 6 at 12, 15, 21). He has not clearly convinced the Court that the Rule 3.4(c) violation finding suffered any infirmity of proof.

> ### 3.     Abbott Has Not Adequately Shown That The Rule 3.4(c) Violation Finding Deprived Him Of Due Process

Abbott also challenges the Delaware Supreme Court's finding of a 3.4(c) violation on due process grounds. (D.I. 6 at 71-72). To succeed, he must make a clear and convincing showing that the "procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process." D. Del. LR 83.6(b)(5)(A). Abbott has not done so.

Abbott argues that Rule 3.4(c) did not adequately notify him that his actions amounted to a violation. (D.I. 6 at 71-73). This argument misreads Local Rule 83.6's "due process" factor, which may warrant relief if the *procedure* – not the rule – lacked notice or opportunity to be heard. *See* D. Del. LR 83.6(b)(5)(A). The Third Circuit found that another disciplined attorney, Robert Murphy, had not been deprived of due process because he "was (1) notified of the charges by the ODC's letter and the petition for discipline, (2) afforded the opportunity to present evidence and witness testimony before the special master during the disciplinary hearing, and (3) given chances to present oral and written argument" before the entities involved in the disciplinary process. *In re Murphy*, No. 22-1429, 2023 WL 4578786 at *2 (3d Cir. July 18, 2023).

Here, Abbott was first notified of the ODC investigation on July 23, 2015, and engaged in "frequent communication and motion practice" during that initial investigation. (D.I. 1 at 19). He first learned of the disciplinary petition that included the Rule 3.4(c) allegation on December 16, 2019, (D.I. 1 at 26), and has since had the chance to: file an answer to this allegation (D.I. 1 at 30); submit materials to the Preliminary Review Committee (D.I. 1 at 26); present his

own testimony, witness testimony, and exhibits at two separate Panel hearings, one of which lasted seven days (D.I. 1 at 34, 37); and file objections to the Panel's conclusions with the Delaware Supreme Court (D.I. 1 at 6).  Even if Abbott had fewer oral argument opportunities than Robert Murphy did in the Third Circuit case quoted above, he still had considerable opportunity to make his opinion heard – at least as much as Jeffrey Martin, another disciplined attorney whose two ODC hearings satisfied the "due process" factor in this District's view.  *In re Martin*, Misc. No. 14-242, 2015 WL 865451 at *8 (D. Del. Feb. 26, 2015).  The procedure that found Abbott in violation of DLRPC Rule 3.4(c) therefore did not deprive him of due process.

Abbott does not make any Rule 3.4(c)-specific arguments concerning the "grave injustice" or "substantially different discipline" factors.  The Court thus sees no grounds for reinstatement related to this rule.

## B.    The Rule 8.4(c) Violation

Both DLRPC Rule 8.4(c) and its ABA Model Rule equivalent define "conduct involving dishonesty, fraud, deceit, or misrepresentation" as professional misconduct.  *See* MODEL RULES OF PROF'L CONDUCT r. 8.4(c) (AM. BAR ASS'N 2020); DLRPC Rule 8.4(c).

### 1.    The Delaware Supreme Court Found That Abbott Violated Rule 8.4(c)

ODC's disciplinary petition alleged that "by making affirmative statements to the Court and opposing counsel, including but not limited to statements [in the March 16, 2015 Letter] . . . that were contrary to Respondent's legal strategy, Respondent's advice to his client and/or Respondent's understanding of the facts and law," Abbott violated Rule 8.4(c).  (D.I. 1 at 51).

The Delaware Supreme Court concurred.  It found that Abbott knew of Jenney's re-transfer plans because "he had advised Jenney that he could transfer the Properties back to himself in the future" and "made no effort to determine who would actually be in Control of the Properties after the transfer."  (D.I. 1 at 52).  It also cited a previous draft of the March 16 email indicating that

10

Abbott knew Jenney's trimming obligations extended to his successors, heirs, and assigns. (D.I. 1 at 53). With this knowledge, the Delaware Supreme Court found Abbott violated 8.4(c) by writing in his March 16, 2015 letter to the Vice Chancellor that:

> (i) Jenney no longer had any ownership interest in the Properties [at issue], even though Jenney continued to hold *de facto* ownership rights in the Properties and intended to reconvey title back to himself; and (ii) stating that Jenney's obligations [to trim the trees] under the Settlement Agreement [that served as the basis for the Consent Order] were purely *in personam* without disclosing the Provisions of Paragraph 17 in the Consent Order [which bound Abbott's successors, heirs and assigns].

(D.I. 1 at 50-51).

### 2.     The 8.4(c) Allegation And Decision Did Not Deprive Abbott Of Due Process

The February 5, 2020 disciplinary petition informed Abbott that its 8.4(c) allegation rested on his statements in the March 16 letter. (D.I. 1 at 51). Abbott contends that the Board Panel's Report and Recommendation "found uncharged omissions, not the charged affirmative statements," (D.I. 6 at 36), and that this amounted to a "post-trial attempt to bring a new charge based on the 2 Alleged Omissions" that violated his due process rights. (D.I. 6 at 83; *see also* D.I. 6 at 4-5, 2, 62, 63, 73 (similar arguments)). No such violation occurred.

The Board Panel docketed its findings and recommendations with the Delaware Supreme Court, which found upon an independent and *de novo* review ((D.I. 1 at 43) that Abbott's March 16 Letter violated Rule 8.4(c) by making two false statements: that Jenney "no longer has any ownership interest in the properties," and that his obligations to trim the trees were "purely *in personam*." (D.I. 1 at 50-52). It rejected Abbott's contention that the "omissions" found by the Board Panel meaningfully differed from the "affirmative statements" charged in the Petition, and

explained that previous Delaware Supreme Court opinions established that "a lawyer's *incomplete or misleading* statements to a court violate [DLRPC] Rule 8.4(c)."  (D.I. 1 at 51) (emphasis added).

Abbott was thus found to have violated 8.4(c) by writing the same letter that ODC's disciplinary petition warned him could violate this rule.  He suffered no lack of notice or opportunity to be heard that could have deprived him of due process in this context.

### 3.  Abbott Has Not Shown Any Infirmity Of Proof In This Decision

Abbott argues in his Response that "the fact pattern suggested by ODC" concerning his 8.4(c) violation "was not established by one iota of evidence at trial."  (D.I. 6 at 19).  The Court disagrees.

Some of Abbott's arguments on this point challenge the Delaware Supreme Court's conclusions without casting any doubt on the underlying evidence.  Abbott describes the 8.4(c) charge as based on a "Crystal Ball Theory [that] inanely posits that Abbott had to predict the future regarding the 2 Properties," (D.I. 6 at 23), and notes that Jenney testified that Abbott "had no knowledge of how the 2 Properties were dealt with post-transfer."  (D.I. 6 at 27, 37 n.39; *see also* D.I. 6 at 36 (similar arguments)).  Yet he does not deny telling Jenney in his March 7 email that "you can just wait a few years and then have [your wife] convey the parcels back to you."  (D.I. 1 at 10-11).  Nor does he dispute that "during the disciplinary hearing, Jenney testified that he had just as much control over the Properties after the transfer to his wife as he did before."  (D.I. 1 at 17-18).  Abbott further claims to have held a "legal opinion" that the Consent Order had lapsed, as he represented in his March 16 letter.  (D.I. 6 at 27-28, 37).  But he had told Jenney in a March 9, 2015 email that the Consent Order was "binding on heirs, successors, and assigns." (D.I. 1 at 12).  Abbott has not disclaimed that email or otherwise cast doubt on it.

Several pieces of evidence thus contradict the March 16 letter's representations that Jenney's obligations were *in personam* and that Jenney no longer had any ownership in the land.

(D.I. 1 at 50-52). This evidence still indicates that Abbott either knew or should have known – even without a crystal ball – that Jenney had an obligation, hoped to avoid it, and planned to restore the properties to himself once he did so.

Abbott also argues in his Response that he lacked an opportunity to testify that he confirmed Jenney's wife had been advised of the planned transfer and that no prenuptial agreements, trusts, or other issues would prevent it. (D.I. 6 at 63). Yet this testimony would not change the falsity of the March 16 letter statements; Jenney maintained *de facto* control while Abbott said he "no longer had any ownership interests," and the obligations ran with the land when Abbott said they were *in personam*. (D.I. 1 at 13, 17-18, 50-52). Abbott's attempt to characterize the statements as "affirmative legal arguments" or "legal contentions" rather than "factual omissions" or "factual assertions," (D.I. 6 at 23, 35-36), his argument that the Consent Order was "hiding in plain sight" as a public document, (D.I. 6 at 23), and his claim that he kept the Vice Chancellor "apprised of his client's actions quite extensively and promptly," (D.I. 6 at 19), also cannot make these falsehoods true. He has thus failed to show any infirmity of proof.

Abbott briefly challenges 8.4(c)'s applicability on some grounds that the Delaware Supreme Court already rejected,[2] decisions to which this Court will defer. *See Fina*, 2020 WL 4050416 at *6. He also argues in a footnote that he "was protected by DLRPC Rule 1.6 regarding any failure to disclose Mr. Jenney's plans (if Abbott knew them) based on the Lawyer-Client Privilege." (D.I. 6 at 27 n.25). Abbott does not specify which of the Rule 83.6 factors he believes

---

[2]     *See* D.I. 6 at 59 (arguing "the 2 Alleged Omissions generated no issues in the litigation") *and* 68 n.54 (claiming that the Delaware Supreme Court's holding in *In re Lyle*, 74 A.3d 654 (Del. 2013)(TABLE) permits his conduct under 8.4(c) *and* D.I. 1 at 54 (explaining that Abbott "misreads *Lyle*," and that "neither the Court nor the Board held that a Rule 8.4(c) violation requires proof of reliance and damages"). *See also* D.I. 6 at 34, 41, 57, 107 (arguing that laches bars that the 8.4(c) charge specifically and "most of the Charges against Abbott" as well) *and* D.I. 1 at 68 (rejecting the laches defense).

this argument supports.  *Id.*  The Court therefore cannot find clear and convincing evidence that any of these factors arose from his 8.4(c) violation.

    **C.**    **The Rule 3.5(d) Violation**

    DLRPC Rule 3.5(d) states that a lawyer shall not "engage in conduct intended to disrupt a tribunal or engage in undignified or discourteous conduct that is degrading to a tribunal."

        **1.**    **The Delaware Supreme Court Found Abbott In Violation Of DLRPC Rule 3.5(d)**

    As noted above, Abbott made several filings with the Board and Delaware Supreme Court in which he alleged that the Vice Chancellor had acted out of insanity or personal animus in referring him for discipline, and that the Delaware Supreme Court had overlooked corruption in ODC's handling of the matter.  (D.I. 1 at 21-22, 24-27).  The ODC described these remarks as the "degrading statements" prohibited by Rule 3.5(d), (D.I. 1 at 29), and the Delaware Supreme Court ultimately agreed.  (D.I. 1 at 64).

        **2.**    **Abbott Has Not Shown Any Infirmity Of Proof Or Due Process Deprivation In The Finding That He Violated Rule 3.5(d)**

    Abbott takes issue with the Delaware Supreme Court's finding that he violated Rule 3.5(d). His Response reiterates several arguments that the Delaware Supreme Court considered and rejected about Rule 3.5(d)'s scope and applicability: that his statements are protected by the First Amendment;[3] that they were not made to a "tribunal" as contemplated by Rule 3.5(d),[4] that his

---

[3]    *See* D.I. 6 at 16-18, 25, 73-75, 99-100, 132 (Abbott raising this argument before this Court) *and* D.I. 1 at 62-64 (Delaware Supreme Court rejecting this argument).

[4]    *See* D.I. 6 at 23, 24, 25, 26, 31, 32, 37-39, 44, 50, 107 (Abbott raising this argument before this Court) *and* D.I. 1 at 57-58 (Delaware Supreme Court rejecting this argument).

statements could not violate this rule by virtue of being true or fact-based,[5] harmless,[6] privileged,[7] confidential,[8] or unknown to their subjects;[9] and that he could not violate this rule by virtue of representing himself pro se when he made them.[10]

The Court will not re-evaluate these arguments.  Nor will it examine Abbott's contentions that Delaware Supreme Court caselaw cannot replace the DLRPC's text, (D.I. 6 at 31), or that a statement must be "rude, crude, or vulgar," or meet an "egregious level of threats and profanity" to violate DLRPC Rule 3.5(d).  (D.I. 6 at 6, 6 n.9, 26, 26 n.22).  Instead, the Court will exercise the same deference to a state supreme court's interpretation of its disciplinary rules that it applied in *Fina.* 2020 WL 4050416 at *4-*6.

Abbott writes that he presented unrebutted testimony "that there was a lack of proof of the necessary elements to establish a violation of Rule 3.5(d)."  (D.I. 6 at 17).  He does not elaborate on this lack of proof, nor has he disputed the authenticity of his statements that led the Delaware

---

[5]     *See* D.I. 6 at 33, 43-44, 53-54, 77 (Abbott raising this argument before this Court) *and* D.I. 1 at 63 (Delaware Supreme Court rejecting this argument).

[6]     *See* D.I. 6 at 59, 61, 122 (Abbott raising this argument before this Court) *and* D.I. 1 at 53-54, 77-79 (Delaware Supreme Court rejecting this argument).

[7]     *See* D.I. 6 at 5, 6, 18, 23, 24, 25, 33, 37-39, 46, 54, 61 (Abbott raising this argument before this Court) *and* D.I. 1 at 59-62 (Delaware Supreme Court rejecting this argument).

[8]     *See* D.I. 6 at 5, 6, 18, 23, 24, 25, 33, 37-39, 49, 55, 61, 67-68, 106 (Abbott raising this argument before this Court) *and* D.I. 1 at 59-60 (Delaware Supreme Court rejecting this argument).

[9]     *See* D.I. 6 at 16, 18-19, 23, 25, 31, 32, 37-39, 49, 51, 52, 59, 61, 63, 67-68, 70 n.6,119-120 (Abbott raising this argument before this Court) *and* D.I. 1 at 58-59 (Delaware Supreme Court rejecting this argument).

[10]     *See* D.I. 6 at 16-17, 23, 25, 29, 30, 31, 37-39, 42-43, 48, 49-50, 51, 61, 67-68, 99-100, 107, 108 (Abbott raising this argument before this Court) *and* D.I. 1 at 56 (Delaware Supreme Court rejecting this argument).

Supreme Court to find he had violated DLRPC Rule 3.5(d).  This Court therefore cannot find clear and convincing evidence of any infirmity of proof.

Abbott also claims that the Delaware Supreme Court's interpretation of DLRPC Rule 3.5(d) deprived him of due process.  (D.I. 6 at 30, 71-72, 99-100).  Abbott was first notified that the ODC planned to include this violation in its disciplinary petition on December 16, 2019.  (D.I. 1 at 26).  He received notice that this alleged violation was based on "Abbott making degrading statements about the Vice Chancellor and this Court in submissions to the Board, the [Public Integrity Commission], and/or this Court" on February 5, 2020.  (D.I. 1 at 29).  As already discussed in Section III.A.3, this timeframe's notice and opportunity to be heard protected Abbott's due process rights.  Abbott's challenges to the Delaware Supreme Court's 3.5(d) determination therefore do not disturb his disbarment before this Court.

> **3.    The Textual Difference Between DLRPC 3.5(d) and ABA Model Rule 3.5(d) Does Not Trigger the "Grave Injustice" or "Substantially Different Discipline" Factors**

As stated above, DLRPC Rule 3.5(d) states that a lawyer shall not "engage in conduct intended to disrupt a tribunal or engage in undignified or discourteous conduct that is degrading to a tribunal."  ABA Model Rule 3.5(d), however, only states that a lawyer shall not "engage in conduct intended to disrupt a tribunal."  MODEL RULES OF PROF'L CONDUCT r. 3.5(d) (AM. BAR ASS'N 2020).  Abbott notes this difference and argues that "the Delaware Order's finding of a Rule 3.5(d) violation by Abbott is based upon language which does not exist in the Rule 3.5(d) provision applicable in this Court.  As a result, that violation finding has no impact on Abbott's practice as a member of the District Court Bar."  (D.I. 6 at 7-10).

Abbott does not specify which of the Rule 83.6(b) factors he believes this argument supports.  The Court does not see this discrepancy having any impact on the due process or infirmity of proof factors.  To the extent Abbott means that this Court would inflict a grave injustice

upon him by disciplining him for these statements, or that these statements are "deemed to warrant substantially different discipline" here, the Court disagrees.

Abbott has not shown clear and convincing evidence that he would suffer a "grave injustice" if disbarred for conduct that included these statements.  Although ABA Model Rule 3.5(d) does not explicitly ban "degrading statements," Comment 3 to this Rule suggests that it can apply to them.  This Comment warns attorneys against "belligerence and theatrics" and states that "refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants."  MODEL RULES OF PROF'L CONDUCT r. 3.5 cmt. 3 (AM. BAR ASS'N 2020).[11]

Abbott has the burden of proof in this matter.  *See In re Surrick*, 328 F.3d at 231-232 (requiring clear and convincing proof of one of the *Selling* factors, including "some grave reason" that federal disbarment would be unjust (citing *Selling*, 243 U.S. at 51 and *In re Kramer*, 282 F.3d 721, 724-25 (9th Cir. 2002))).  Abbott has not convinced the Court that his statements do not violate these ABA Model Rules – or that disbarment for these violations, alongside the others, would constitute a grave injustice.

Nor does the Court see a need for "substantially different discipline" in this situation.  The Third Circuit does not appear to have adopted a clear standard of proof for this factor.  *See In re Surrick*, 328 F.3d at 231-232 (not specifically addressing the "substantially different discipline" factor).  This Court, however, found that "substantially different discipline" was warranted in *Fina*

---

[11]     Moreover, some other ABA Model Rules' plain text appears to prohibit at least some of Abbott's comments.  For instance, Abbott described the Vice Chancellor as having an "unhinged personality," an "obviously disturbed state of mind" and an "inability to think clearly and cogently" before even requesting discovery from the Vice Chancellor.  The Court sees at least a strong possibility that these remarks violated ABA Model Rule 8.2(a)'s prohibition on making a statement "with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge [or] adjudicatory officer."  MODEL RULES OF PROF'L CONDUCT r. 8.2(a) (AM. BAR ASS'N 2020).

for five reasons.  Four of these reasons – "clear differences of opinion" as to whether the attorney's conduct violated the state rule, discipline imposed on others involved in the same conduct, an "unblemished disciplinary record" with the state bar prior to disbarment, and the misconduct's purported victim supporting the attorney in the disciplinary process, *Id.* – are clearly not present here.[12]  *See In the Matter of Fina*, 2020 WL 4050416 at *7-*8.  The Court also noted in *Fina* that "the District of Delaware does not have a direct corollary" to the Pennsylvania rule at issue in that case, and that the ABA Model Rules lacked the state rule's "core tenet."  *Id.*  Given the already-discussed applicability of the ABA Model Rules to Abbott's statements, the Court cannot find likewise here.  Abbott's statements about the Vice Chancellor violated Delaware Bar standards of conduct so as to support the overall disbarment decision, and this Court has not found that a different outcome should occur here.

> ### D.    The Rule 8.4(a) and 8.4(d) Charges

DLRPC Rule 8.4(a), like its ABA Model Rule equivalent, states that it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another."  *See* Model Rules of Prof'l Conduct r. 8.4(a) (Am. Bar Ass'n 2020) *and* DLRPC 8.4(a).  DLRPC Rule 8.4(d), again like its ABA equivalent, defines "conduct that is prejudicial to the administration of justice" as professional misconduct.  *See* Model Rules of Prof'l Conduct r. 8.4(d) (Am. Bar Ass'n 2020) *and* DLRPC Rule 8.4(d).

---

[12]     There have been no "differences of opinion" as to whether Abbott's conduct violated DLRPC 3.5(d); both the Panel and the Delaware Supreme Court concurred on this point. (D.I. 1 at 36, 64).  There were also no other attorneys involved in making these statements, (D.I. 1 at 25-27), and no statements of support from the Vice Chancellor.  Nor does Abbott have an unblemished disciplinary record in the Delaware bar; he was previously disciplined in 2007.  (D.I. 1 at 37).

Abbott characterizes the 8.4(a) and 8.4(d) violations as "catch-all charges" that must fail if he was not shown to have violated Rules 3.4(c), 3.5(d), or 8.4(c).  (D.I. 6 at 3-4, 7, 9, 11-12, 15, 18, 20-21, 131).  Yet the Delaware Supreme Court did find he violated the latter three rules, (D.I. 1 at 44, 54, 64), and as discussed above none of those findings triggered any of the 83.6(b) conditions that could rule out reciprocal discipline.  The Court therefore cannot find any such weaknesses related to these two rules either.

### E.    Abbott's Non-Rule-Specific Arguments Fall Short

Abbott takes issue with more than the findings that he violated specific rules; his Response also alleges that the state disciplinary proceedings had several across-the-board weaknesses.  He argues that his state disbarment denied him due process by: violating his Sixth Amendment rights (D.I. 6 at 76-77); failing to address certain RICO claims against members of the ODC and Delaware Supreme Court (D.I. 6 at 78-82); denying his discovery requests and quashing his subpoenas (77-78, 83-99, 105-111); and through the alleged actions of a "Board Panel Plant" and other attorneys involved.  (D.I. 6 at 85, 100-106, 111-113).[13]  He also argues that "the Vice Chancellor denied Abbott even a minimum modicum of Due Process by launching personal attacks at him without any legitimate opportunity for Abbott to defend himself."  (D.I. 6 at 57; *see also* D.I. 6 at 34 (similar argument)).

These arguments fail.  Regardless of whether these wrongdoings occurred, Abbott had notice of his potential violations more than three years before the Delaware Supreme Court's disbarment decision.  (*See* D.I. 1 at 1 (disbarment decision issued November 9, 2023) *and* D.I. 1 at 27 (Abbott notified of petition for discipline on February 5, 2020)).  He also had multiple opportunities to testify, present witness testimony, and challenge the allegations.  (D.I. 1 at 19, 26,

---

13    *See also* D.I. 6 at 35, 47, 48, 52-53, 69 (raising similar points without connecting them to any of the Rule 83.6(b) factors).

30, 34, 37, 40-43).   As already discussed in Section III.A.3, this satisfies due process in the reciprocal-discipline context.  *See* D. Del. LR 83.6(b)(5)(A) *and In re Murphy*, 2023 WL 4578786 at *3.

Abbott also claims that "Rule 9 [of the Delaware Lawyers' Rules of Disciplinary Procedure ('DLRDP')] afforded Abbott the right to a hearing on Sanctions, but the Supreme Court just summarily issued a Sanction." (D.I. 6 at 10).  That is not the case.  Rule 9's text does not guarantee a sanctions hearing before the Delaware Supreme Court.  *See* DLRDP 9(d) and (e) (establishing the formal proceedings for Delaware attorney-discipline cases, and providing for hearings before a Board panel, but not the Delaware Supreme Court).  Abbott has not cited any state caselaw to the contrary.  Furthermore, the Delaware Supreme Court finalized its decision only after Abbott had presented testimony and evidence at the Panel's August 24, 2022 sanctions hearing.  (D.I. 1 at 37-40).  He has not established a due process violation with this claim.

At another point in his Response, Abbott argues that "the 8 ½ year attack campaign . . . constituted a grave injustice to Abbott and his state property right (his law license)," (D.I. 6 at 113), because his "14th Amendment Due Process rights were trampled upon with impunity throughout the Star Chamber Proceeding.  And the System is Unconstitutional under the 1st and 14th Amendments' Freedom of Association and Equal Protection clauses." (D.I. 6 at 113-114).  *See also* D.I. 6 at 46-47, 107, 128-29 (also raising First Amendment and Freedom of Association arguments).  The Court need not evaluate these claims.  They rest on the assumption that Local Rule 83.6(b)(5)(C) is triggered when a purported "state property right" suffers a "grave injustice." This is incorrect; this Rule requires Abbott to show that "the imposition of the same discipline *by this Court*" – that is, Abbott's disbarment from a federal district court – "would result in grave injustice."   D. Del. LR  83.6(b)(5)(C)(emphases added).   Abbott's 1st and 14th Amendment

arguments thus fail to even identify the injustice this Court must consider – much less demonstrate that this injustice would occur.

Abbott also devotes much of his Response to challenging the Panel's disciplinary recommendation. He argues in one section that this recommendation "ignored the applicable legal standard and undisputed evidence," (D.I. 6 at 58-68), in another that this recommendation is "not based on a proper 4-part analytical approach & it is excessive," (D.I. 6 at 68-70), and in still another that "the draconian and unjustified penalty of disbarment was not warranted under the circumstances and the sanction was based on faulty premises." (D.I. 6 at 114-128). These sections largely rest on arguments about the rules' scope and applicability rejected elsewhere in this Opinion.[14] In these sections and elsewhere, Abbott raises other arguments with no clear bearing on any of the Rule 83.6 factors.[15] These challenges therefore fail to establish any of these factors.

---

[14]     *See* D.I. 6 at 58, 59, 60, 63, 114, 117, 119, 120, 121, 123, 124, 125 (trying to defend his letter to the Vice Chancellor as harmless, rooted in ignorance of what would happen to the properties in the future, or permissibly omitting already-known information); D.I. 6 at 119, 123, 125 (claiming he was charged with "affirmative statements" but that the Panel concocted "omissions"); D.I. 6 at 62, 114, 115 (characterizing his first email as "advising his client on how to potentially avoid a Court Judgment"); D.I. 6 at 59, 61, 63, 67-68, 114, 115, 119, 120, 124-126 (claiming his statements about the Vice Chancellor and Delaware Supreme Court were either true, protected expressions of opinion, confidential, privileged, made in a pro se capacity and/or not to a tribunal, or unknown to their subjects); D.I. 6 at 58, 63, 117 (describing the property transfer as legitimate); D.I. 6 at 63 (arguing that he lacked an opportunity to testify that he confirmed Jenney's wife had been advised of the planned transfer).

[15]     *See* D.I. 6 at  4 n.3 (claiming that no disposition sheet was ever provided to him as required by procedure); 7-8 (pointing out that "Abbott Has No Prior Disciplinary Record In The Delaware District Court Bar"); D.I. 6 at 57-58 (arguing he was a victim of "Vindictive Prosecution . . . Selective Prosecution, Demagogic Prosecution, Bad Faith, and Unclean Hands"); D.I. 6 at 59-60, 118 (arguing that the Board's discipline recommendation misapplied certain ABA disciplinary standards without indicating that this Court would apply the same); D.I. 6 at 60-61 (alleging that the Board Panel "concocted a new theory" for one of the charges); D.I. 6 at 64-65 (section arguing that "The Panel Confused The Mitigating Factor Of Full & Free Disclosure Or Cooperative Attitude & Ignored The Significant Evidence Of Abbott's Good Character And Reputation"); D.I. 6 at 65-67

Abbott also suggests he was disbarred "because Delaware Judges simply don't like Abbott personally," (D.I. 6 at 3 n.2), and cites several Delaware state-court cases that either ended in lighter sanctions for other attorneys or purportedly indicate that Abbott should receive the same. (D.I. 6 at 51, 61, 69-70, 115-117, 127).   If Abbott believes these cases show that either "the imposition of the same discipline by this Court would result in grave injustice" or that his actions are "deemed by this Court to warrant substantially different discipline," D. Del. LR 83.6(b)(5)(C)-(D), he is mistaken.   Each of the cases he lists were decided in the Delaware state court system. *See Matter of Lankenau,* 138 A.3d 1151 (Del. 2016); *In re Howard*, 765 A.2d 39 (Del. 2000); *In re Steiner*, 817 A.2d 793 (Del. 2003); *In re Vanderslice*, 55 A.3d 322 (Del. 2012); *Matter of Tos*, 576 A.2d 607 (Del. 1990); *Matter of McCann*, 669 A.2d 49 (Del. 1995); *Matter of Shearin*, 721 A.2d 157 (Del. 1998); *In re Poliquin*, 49 A.3d 1115 (Del. 2010); *In re Pankowski*, 947 A.2d 1122 (TABLE)(Del. 2007); *In re O'Brien*, 26 A.3d 203 (Del. 2011); *See also* (D.I. 6 at 69-70, 115-117) (citing these cases).  These cases therefore do not establish Abbott's federal disbarment as gravely unjust or unusual.

## IV.   <u>CONCLUSION</u>

Abbott has failed to make any of the showings that could warrant relief from disbarment under Local Rule 83.6(b)(5).  He shall therefore remain disbarred from practice in this Court.  An appropriate Order shall issue.

---

(section arguing that the recommendation "Whiffed On Pattern Of Misconduct, Delay In Proceedings, Remoteness Of Prior Offenses, Vice Chancellor Standard & Psychological Abuse Factors") and 121-22 (similar argument); D.I. 6 at 68-69 (arguing that the disciplinary recommendation is not based on the correct analytical approach); D.I. 6 at 125 (alleging that ODC engaged in "deceptive conduct").